UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

RICHARD P. WEBER,

                Plaintiff,

     v.                                             **DECISION AND ORDER**
                                                           07-CV-615S

AVX PENSION PLAN FOR BARGAINING
UNIT AND HOURLY EMPLOYEES ("THE PLAN");
PENSION PLAN COMMITTEE, AS ADMINISTRATOR
OF AVX PENSION PLAN FOR BARGAINING UNIT
AND HOURLY EMPLOYEES ("THE ADMINISTRATOR"),

                Defendants.

## I. INTRODUCTION

Plaintiff Richard P. Weber commenced this action on September 19, 2007, alleging claims for the wrongful denial of benefits under the Employee Retirement Income Security Act ("ERISA"), common law breach of contract, equitable estoppel, and reformation. Defendants moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.[1] Plaintiff opposed Defendants' Motion.[2] Defendants subsequently moved to Strike the Affidavit of Catherine Atwell, filed in opposition to the summary judgment motion.

---

[1] In support of their motion, Defendants filed a memorandum of law, a Rule 56.1 Statement of Undisputed Material Facts, exhibits, the Declaration of Susan C. Roney, Esq., and a reply memorandum of law. (Docket Nos. 10 & 19.)

[2] In opposition, Plaintiff filed a memorandum of law, a Rule 56.1 Statement of Material Facts in Dispute, exhibits, and the Affidavits of William W. Berry, Esq., Richard P. Weber, and Catherine Atwell. (Docket No. 17.)

(Docket No. 20.[3]) For the reasons discussed below, Defendants' Motion to Strike is granted in part and denied in part, and its Motion for Summary Judgment is granted.

## II. BACKGROUND

**A. Facts**

The following material facts are undisputed and taken from the parties' declarations, exhibits and respective Local Rule 56.1 statements of facts.[4] Plaintiff Richard P. Weber was formerly employed by Olean Advanced Products ("Olean"), a division of AVX Corporation ("AVX"). (Defs. Statement, ¶ 1.[5]) Plaintiff began his employment with Olean in 1996. (Weber Aff., Docket No. 17, Ex. A, ¶¶ 2-3.) He was born on August 27, 1946. (Id., ¶ 2.)

Through his employment with Olean, Plaintiff was a participant in the AVX Pension Plan for Bargaining Unit and Hourly Employees ("Plan"). (Defs.' Statement, ¶ 2.) AVX is the sponsor of the Plan. (Defs.' Statement, ¶ 2.) The Plan constitutes an employee benefit plan as defined under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1002(2). (Defs.' Statement, ¶ 2.)

Under the Plan, disabled employees may collect disability benefits. Section 11.B

---

[3] In support of their Motion to Strike, Defendants submitted a memorandum of law. (Docket No. 20.) Plaintiff, in response, submitted an Affidavit of William Berry, Esq., and a memorandum of law. (Docket No. 22.)

[4] This Court will deem uncontroverted factual assertions admitted to the extent they are supported by the record evidence. See Local Rule 56.1(c) (statements of undisputed fact that are not controverted by the non-moving party are deemed admitted).

[5] Referring to Defendants' Statement of Undisputed Material Facts, which contains citations to the record evidence. (Docket No. 10.)

2

sets forth the procedure to collect benefits, and states:

**<u>Eligibility and Terms of Payment</u>**

Each Participant whose active service ceases on account of disability shall receive a disability benefit at Normal Retirement Date, or at the time he becomes eligible for early retirement, provided that he meets the following requirements on the date he became disabled:

1. He was actively employed by the Employer

2. He had accrued at lease 5 years of Credited Service.

(Docket No. 10, Ex. C, Attachment A, p. 24; Defs.' Statement, ¶ 10.)

Section 2.14 of the Plan defines "Normal Retirement Date," as "*the later of* age sixty-five (65) or the fifth (5th) anniversary of the date an Employee commenced participation in the Plan." (Defs.' Statement, ¶ 11) (emphasis added). Additionally, section 5.A permits early retirement at the age of sixty-two (62), provided that the employee is fully vested in the Plan. (Defs.' Statement, ¶ 11.) Benefits payable to an employee who takes an early retirement, however, are reduced by five percent "for each year the Participant's Retirement Date precedes his Normal Retirement Date." (Defs.' Statement, ¶ 11.)

The Plan also establishes a Pension Plan Committee ("Committee"), which serves as the Plan's Administrator. Under the Plan, the Committee has the following responsibilities:

The Committee shall perform all such duties as are necessary to operate, administer, and manage the Plan in accordance with the terms thereof, including but not limited to the following:

1. To determine all questions relating to a Participant's coverage under the Plan. . . .

3. To compute and authorize the payment of retirement income and other benefit payments to eligible Participants and beneficiaries.

3

4. To interpret and construe the provisions of the Plan. . . .

(Pension Plan, Docket No. 10, Ex. C., Attach. A, pp. 27-28.)

The contents of the Plan are summarized in a Summary Plan Description ("SPD"). In relevant part, the SPD contains a section entitled "HOW YOUR BENEFITS ARE PAID." (SPD, Docket No. 10, Ex. C., Attach. B, p. 6.) This section states, in relevant part, that:

> Your disability benefit will be calculated in the same manner as your normal retirement benefit based on your credited service on the date of your disability. To qualify for a Disability Benefit you must:
>
> • Have five or more Years of Service, and
>
> • Are totally and permanently disabled.

(Id.)

Lastly, there is a section in the SPD entitled, "Time of Distributions." There, the SPD states that, "Generally, benefits begin on your Normal, Early or Postponed Retirement Date (whichever applies)." (Id., p. 7.) These are the only options for the commencement of distributions.

Plaintiff retired from Olean on October 1, 2006, after his doctor determined that he was totally and permanently disabled. (Weber Affidavit, ¶¶ 4,7.) On October 1, 2006, Plaintiff was 60 years old.

In a letter dated September 21, 2006, Michele Benjamin, Olean's Human Resources Assistant, informed Plaintiff that, as of October 1, 2006, Plaintiff would have accrued "a benefit with nonforfeitable 100% rights [sic] under the AVX Pension Plan. . . ." (Docket No. 10, Ex. A, Ex. B.) The letter further stated that Plaintiff would be entitled to receive his yearly pension in the amount of $2,727.00, as of August 27, 2011, the date on which Plaintiff turns 65-years old. (Id.)

In response to Benjamin's letter, on January 29, 2007, William W. Berry, Esq., filed a claim with the Plan Administrator on Plaintiff's behalf. (Defs.' Statement, ¶ 8.) Berry argued that Plaintiff was entitled to benefits as of October 1, 2006, the day he left Olean. (Weber Affidavit, ¶ 8; Defs.' Statement, ¶ 8.)

Chippie Donelan, Corporate Benefits Administrator, responded that, because Plaintiff was 60-years old at the time he left Olean, he was unable to immediately collect disability benefits under the terms of the Plan. (Docket No. 10, Ex. A, Ex. D.) Donelan referenced section 11.B of the Plan. (Id.) Donelan further noted that Plaintiff could elect to take benefits at the age of sixty-two, his early retirement age, or wait until the normal retirement age of sixty-five. (Id.)

Plaintiff appealed the Committee's decision. (Defs.' Statement, ¶ 13.) Plaintiff argued that the terms of the Plan and the SPD conflict, with the latter establishing that Plaintiff is entitled to benefits as of October 1, 2006, the date he left Olean. (Docket No. 10, Ex. A, Ex. E.)

The Committee responded via letter from Erwin Hass, Esq., dated April 13, 2007. (Defs.' Statement, ¶ 18.) Hass first stated that no conflict exists between the Plan and the SPD. (Defs.' Statement, ¶ 18.) According to Hass, both documents set forth the age limitations that affect the timing of distributions. (Id.) Specifically, Hass referenced section 11.B of the Plan, and page seven of the SPD – the "Time of Distributions" subsection. (Id.) Second, Hass acknowledged that Plaintiff is entitled to a disability benefit, but stated that Plaintiff must first meet the age requirements. (Id.) Hass' letter constituted the Committee's final decision regarding Plaintiff's claim for benefits. (Defs.' Statement, ¶ 19.) Plaintiff commenced this action thereafter.

## III. DISCUSSION

### A. Defendants' Motion to Strike

#### 1. Standard

Rule 56(e) of the Federal Rules of Civil Procedure governs the form of supporting or opposing affidavits filed at the summary judgment stage. It provides as follows: "A supporting and opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated." FED. R. CIV. P. 56(e).

Rule 402 of the Federal Rules of Evidence states that "[e]vidence which is not relevant is not admissible." FED. R. EVID. 402. Relevant evidence is defined by Rule 401 of the Federal Rules of Evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probably than it would be without the evidence." FED. R. EVID. 401.

#### 2. Analysis

Here, the majority of the Atwell Affidavit is irrelevant and, thus, inadmissible. For instance, paragraphs 1-4 contain irrelevant personal information. Paragraph 5, however, is relevant insofar as Atwell states that she, like Plaintiff, was formerly employed by Olean, and was also enrolled in the Plan. Paragraphs 6-15 are irrelevant as they address Atwell's work history and her purported allergic reaction to a substance used in the manufacturing process at Olean. But paragraph 16 is relevant as Atwell states that she, like Plaintiff, believed that she was entitled to disability benefits under the Plan after she was terminated. Atwell states that the basis of her belief was due in part to her conversations with Plaintiff.

Paragraph 17 is irrelevant as the Equal Employment Opportunity Commission's decision regarding Atwell's application for benefits has no bearing on this case. Lastly, paragraph 18 is relevant because Atwell, like Plaintiff, was fully vested under the Plan at the time of her termination.

In light of the foregoing, Defendants' Motion to Strike is granted in part and denied in part. Specifically, paragraphs 1-4, 6-15, and 17 contain irrelevant evidence, and are inadmissible pursuant to Rule 402 of the Federal Rules of Evidence. Thus, Defendants' Motion to Strike is granted as to these paragraphs. But paragraphs 5, 16, and 18 are relevant, and have been given due consideration by this Court. Thus, Defendants' Motion to Strike is denied as to these paragraphs.

**B.     Defendants' Motion for Summary Judgment**

**1.     Standard**

Federal Rule of Civil Procedure 56 provides that summary judgment is warranted where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). A "genuine issue" exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A fact is "material" if it "might affect the outcome of the suit under governing law." Id.

In deciding a motion for summary judgment, the evidence and the inferences drawn

from the evidence must be "viewed in the light most favorable to the party opposing the motion."  Addickes v. S.H. Kress and Co., 398 U.S. 144, 158-59, 90 S.Ct.1598, 1609, 26 L.Ed.2d 142 (1970).  "Only when reasonable minds could not differ as to the import of evidence is summary judgment proper."  Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991).  The function of the court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  Anderson, 477 U.S. at 249.

   2.   **Analysis**

      a.   **Plaintiff is Not Entitled to a Distribution of Benefits as of October 1, 2006**

In his first claim, Plaintiff seeks to immediately secure benefits allegedly owed to him under the Plan as of October 1, 2006, the date of his disability retirement.  (Pl. Compl., ¶ 17.)  He also seeks clarification of his future rights under the Plan.  (Id.)  Plaintiff maintains that he is entitled to both forms of relief pursuant to 29 U.S.C. § 1132(a)(1)(B), which allows a participant to recover benefits due to him, and to seek clarification of any future rights owed to him under the plan.  (Id.)

In their summary judgment motion, Defendants argue that both the SPD and the Plan expressly prohibit Plaintiff from obtaining disability benefits at sixty years of age. (Defs.' Mem., pp. 3-6.)  In response, Plaintiff contends that, if the age limitations are upheld, "the Plan's disability benefit is rendered absolutely meaningless and illusory, [and] offering nothing but false promises. . . ." (Pl.'s Mem., p. 8.) According to Plaintiff, accepting the Committee's construction renders the Plan "a phantom benefit, meaning nothing at all." (Pl.'s Mem., p. 12.)

8

Having thoroughly reviewed the parties' submissions, this Court finds that Defendants are entitled to summary judgment as to Plaintiff's first claim. The undisputed facts reveal that Plaintiff stopped working at Olean when he was 60-years old. And both page seven of the SPD – "Time of Distributions" – and section 11.B of the Plan state that an employee will not receive disability benefits until that employee reaches the normal retirement age of sixty-five, or chooses to retire early, at the age of sixty-two. Because Plaintiff had not reached either age, he is not entitled to collect disability benefits as of October 1, 2006.

In his response to Defendants' summary judgment motion, Plaintiff relies on page six of the SPD under the section entitled, "HOW YOUR BENEFITS ARE PAID," to support his argument that he is entitled to an immediate distribution of benefits. (Pl.'s Mem., pp. 13-15.) Specifically, Plaintiff refers to the SPD's discussion on page six about employee "eligibility" for disability benefits, and employee "qualification" for such benefits. Plaintiff contends that "the lack of reference in either the Time of Distribution subsection [in the SPD] or the Disability Benefits subsection [of the SPD] to each of the others, leads the close reader to the conclusion that the term 'qualify' signals the start-date of disability benefits." (Pl.'s Mem., p. 15.)

But Plaintiff's argument fails to consider the subsequent page of the SPD, which addresses the time of distributions. In other words, Plaintiff's reliance on page six of the SPD focuses on *how* benefits are paid whereas page seven addresses *when* the benefits are paid. Plaintiff then attempts to mitigate the importance of page seven by arguing that this page, and the relevant subsection addressing the timing of distributions, applies only to retirement benefits, not disability benefits. (Pl.'s Mem., p. 15.) This argument fails

because the reader may reasonably assume that the use of the word "benefits," without a preceding qualifier, encompasses both disability and retirement benefits. This conclusion is supported by the structure of the "How Your Benefits Are Paid" section of the SPD as well.

To the extent Plaintiff seeks clarification of his future benefits under the Plan, this Court finds that no reasonable construction of the SPD or Plan would permit the distribution of disability benefits to employees prior to age sixty-two. Moreover, Catherine Atwell's similar "misunderstanding" about the timing of benefit distribution has no effect here because her confusion was partially based on representations made by Plaintiff to her about the meaning of the Plan's provisions.

Lastly, Plaintiff does not avoid summary judgment by arguing that the Plan would be meaningless if this Court upholds the Committee's interpretation. There is nothing meaningless about Plaintiff's disability benefits – they are simply unavailable until Plaintiff satisfies the minimum age requirement. Moreover, Plaintiff's argument suggests that employers are required to distribute disability benefits on the date of disability retirement, but ERISA does not require an employer to provide a retirement plan at all, let alone any particular type of benefits. See e.g., HMI Mech. Sys., Inc. v. McGowan, 266 F.3d 142, 148 (2d Cir. 2001); LaBarbera v. Abbey Tool & Indus. Supply Co., No. 07-CV-3114, 2008 WL 4198546, at *2 (E.D.N.Y. Sep. 5, 2008); see also Siskind v. Sperry Ret. Program, 47 F. 3d 498, 501 (2d Cir. 1995) (noting that one of Congress' aims in enacting ERISA was to afford employers, who design pension plans, flexibility and control). Instead, ERISA simply requires the Plan Administrator to administer the Plan in accordance with the Plan's terms. 29 U.S.C. § 1104(a)(i)(D). Because nothing in the Plan or the SPD mandates that

employees receive benefits prior to satisfying the minimum age requirement, Defendants have complied with ERISA's requirements.

. . .

For the reasons stated above, this Court finds that Defendants are entitled to summary judgment as a matter of law as to Plaintiff's first claim.

### b. The Committee's Denial of Disability Benefits Was Not Arbitrary and Capricious

In his second claim, Plaintiff argues that the Committee's denial of benefits was arbitrary and capricious, and should be rejected. (Pl. Compl., ¶ 18.) Plaintiff alters his argument in his response to Defendants' summary judgment motion, and now contends that this Court may set aside the Committee's determination even if it is not arbitrary and capricious. (Pl's Mem., p. 17.)

Generally, courts review the denial of benefits challenged under ERISA by applying a de novo standard of review. American Society for Technion-Israel Institute of Technology, Inc. v. First Reliance Standard Life Insurance Company, No. 07-CV-3913, 2009 WL 2883598, at *3 (S.D.N.Y. Sep. 8, 2009) (citing Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115, 109 S.Ct. 948, 956-57, 103 L.Ed.2d 80 (1989) ("In reviewing a 'denial of benefits challenged under [ERISA § 502(a)(1)(B)]' courts apply a de novo standard . . .") (brackets in original)). But where, as here, the Plan confers discretionary authority upon the Plan Administrator to determine benefit eligibility and to construe the Plan's terms, the "arbitrary and capricious" standard of review applies. Pagan v. NYNEX Pension Plan, 52 F.3d 438, 441 (2d Cir. 1995) (citing Firestone Tire & Rubber Co., 489

U.S. at 115) ("[W]here the written plan documents confer upon a plan administrator the discretionary authority to determine eligibility, we will not disturb the administrator's ultimate conclusion unless it is 'arbitrary and capricious.'").

In this instance, section fourteen of the Plan provides that the Committee is "[t]o determine *all questions* relating to a Participant's coverage under the Plan." (Pension Plan, Docket No. 10, Ex. C., Attach. A, pp. 27) (emphasis added). Thus, it is clear, the arbitrary and capricious standard of review applies here. Applying this standard, the Court finds that the Committee's decision was not arbitrary and capricious, but is well supported. The Committee rejected Plaintiff's demand for the immediate distribution of benefits because Plaintiff did not meet the minimum age requirement clearly set forth in both the SPD and the Plan. The Donelan and Hass letters both cited the applicable provisions in the SPD and the Plan.

In his opposing papers, Plaintiff attempts to avoid summary judgment by arguing that the SPD and the Plan conflict, thereby warranting application of a higher standard of review. Specifically, Plaintiff contends that the SPD conflicts with the Plan because the former is silent on the Committee's discretionary authority whereas the latter is not. (Pl.'s Mem., pp. 16-17.) But the United States Court of Appeals for the Second Circuit expressly rejected this argument. Tocker v. Philip Morris Companies, Inc., 470 F.3d 481, 489 (2d Cir. 2006) ("[t]he arbitrary and capricious standard of review is warranted where the plan documents provide for discretionary authority, the summary plan description does not contain any conflicting language, and the applicable statutes and regulations do not require that the SPD contain provisions addressing the issue.").

In light of the foregoing, Plaintiff has not demonstrated the existence of a genuine

issue of material fact, and on the basis of these undisputed facts, Defendants are entitled to summary judgment.

### c. The SPD Complies with the ERISA Disclosure Requirements

In his third claim, Plaintiff argues that the SPD does not comply with ERISA's disclosure requirements. (Pl. Comp., ¶ 19.) In particular, Plaintiff contends that he never received a copy of the SPD, and that the SPD "is not sufficiently accurate or comprehensive with regard to eligibility dates for disability benefits and it failed to adequately inform the average plan participant of his or her rights and obligations under the plan." (Weber Aff., Docket No. 19, Ex. A, ¶ 6.)

Title 29 United States Code Sections 1021 and 1022 sets forth ERISA's disclosure requirements. Specifically, section 1021 provides that an SPD must be furnished to each participant covered under an ERISA plan. And section 1022(a) requires that, once furnished, an SPD must conform with certain requirements. In particular, an SPD "shall be written in a manner calculated to be understood by the average plan participant, and be sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan." 29 U.S.C. § 1022(a).

To demonstrate a violation of ERISA's disclosure requirements, a plaintiff "must show more than mere technical or procedural violations." Herter v. Dick's Clothing & Sporting Goods, Inc., 58 F. Supp. 2d 306, 310 (S.D.N.Y. Aug. 5, 1999). "In fact, in order to recover for a technical violation of the ERISA disclosure requirements, a plaintiff must demonstrate extraordinary circumstances, such as 'bad faith, active concealment, or detrimental reliance.'" Id. (quoting Andersen v. Chrysler Corp., 99 F. 3d 846, 859 (7th

13

1996)).

Applying these principles here, this Court finds that Defendants have not run afoul of ERISA's disclosure requirements. First, Plaintiff does not allege that Defendants failed to "furnish" a copy of the SPD. Instead, Plaintiff states that he "never laid eyes upon [the SPD]." (Pl.'s Mem., p. 21.) This vague statement is insufficient to establish a genuine issue of material fact. This Court also finds this statement is contradicted by Plaintiff's allegations relative to his fourth claim for equitable estoppel, wherein he states that he detrimentally relied on the SPD. (Pl. Compl., ¶¶ 20-24.)

Moreover, Plaintiff has not demonstrated bad faith, active concealment, or detrimental reliance. Rather, Plaintiff demonstrates his confusion, and advocates a different interpretation of the SPD, which has no support whatsoever.

Lastly, in his response to Defendants' Motion, Plaintiff also argues that Estate of Becker v. Eastman Kodak Co., 120 F.3d 5 (2d Cir. 1997), supports his claim that the SPD fails to sufficiently comply with ERISA's disclosure requirements. But Becker is not instructive for two reasons. One, Becker explicitly declined to rule on the precise issue for which Plaintiff offers it. See id. at 10 ("Nevertheless, because the deficiencies of the SPD do not stand alone in this case, we need not – and expressly do not – rule that the SPD was insufficient as a matter of law."). Rather, the Circuit Court denied the defendant's summary judgment motion based upon a breach of fiduciary duty. Id. Specifically, the Court noted that one of the defendants, a benefits counselor, provided materially misleading information to Plaintiff. See id. ("Regardless whether the SPD was, by itself, so ambiguous and incomplete as to violate § 1022(b), we find that benefits counselor Ticen exacerbated the lack of clarity inherent in the SPD and thereby provided Becker with

14

materially misleading information."). Here, there is no allegation of a fiduciary breach, and this Court has already found there is no inherent lack of clarity in the SPD.

Consequently, this Court finds that Defendants are entitled to summary judgment on Plaintiff's third claim.

### d. Defendants are Entitled to Summary Judgment on Plaintiff's Equitable Estoppel Claim

In his fourth claim, Plaintiff argues that he is entitled to relief under an equitable estoppel theory. (Pl. Compl., ¶¶ 20-24.) To establish a claim for equitable estoppel, a Plaintiff must demonstrate: (1) a material misrepresentation; (2) reasonable reliance, and (3) injury as a result of the reasonable reliance. Herter v. Dick's Clothing & Sporting Goods, Inc., 58 F. Supp. 2d 306, 312 (S.D.N.Y. 1999) (citing cases). In ERISA cases, principles of estoppel apply under "extraordinary circumstances." Lee v. Burkhart, 991 F. 2d 1004, 1009 (2d Cir. 1993).

Plaintiff, however, fails to allege facts sufficient to set forth a claim for equitable estoppel. First, because the terms of the SPD and the Plan are clear and unambiguous, Plaintiff fails to demonstrate how the SPD or the Plan materially misrepresented any information. Second, even if Plaintiff could make such a showing, he cannot establish the second or third elements since he has not shown reasonable reliance or injury based upon that reliance. For instance, Plaintiff argues that he "relied upon th[e] information [in the SPD] in making the decision to pursue his claim." (Pl. Compl., ¶ 21.) But Plaintiff's decision to file a lawsuit does not constitute an injury. And his reliance upon the SPD for the position taken is not reasonable.

15

In light of the foregoing, Defendants are entitled to summary judgment as to Plaintiff's equitable estoppel claim.

### e. Plaintiff is Not Entitled to Equitable Reformation of the SPD

Lastly, Plaintiff seeks equitable reformation of the SPD "to conform with the Plan." (Pl. Compl., ¶ (b)). Although he does not set forth this claim as its own cause of action, Plaintiff seeks redress under this theory in his prayer for relief. (Id.)

ERISA does not expressly provide a cause of action for equitable reformation of a contract. Scarangella v. Group Health Inc., No. 05-CV-5298, 2009 WL 764454, at *19 (S.D.N.Y. Mar. 24, 2009) (citing Krishna v. Colgate Palmolive Co., 7 F.3d 11, 16 (2d Cir. 1993)). But in some circumstances, a claim for reformation is available pursuant to ERISA section 502(a)(3), 29 U.S.C. § 1132(a)(3). Nechis v. Oxford Health Plans, Inc., 421 F.3d 96, 103 (2d Cir. 2005); see also Bona v. Barasch, No. 01-CV-2289, 2003 WL 1395932, at *12 (S.D.N.Y. Mar. 20, 2003).

Section 502(a)(3) permits "a participant . . . (B) to obtain *other appropriate equitable relief* (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3) (emphasis added). Because reformation is a form of equitable relief, courts have entertained claims for reformation in ERISA cases pursuant to section 502(a)(3). Kawski v. Johnson & Johnson, No. 04-CV-6208, 2005 U.S. Dist. LEXIS, at *15-16 (W.D.N.Y. Dec. 19, 2005) (citing cases).

Reformation is available "in cases of fraud and mutual mistake." AMEX Assurance Co. v. Caripides, 316 F.3d 154, 161 (2d Cir. 2003). Reformation is also available if the terms of a Plan violate ERISA. Nechis v. Oxford Health Plans, Inc., 421 F.3d 96, 103 (2d

Cir. 2005).

But equitable relief is barred when there is an adequate legal remedy for damages under 29 U.S.C. § 1132(a)(1)(B). Kawski, 2005 U.S. Dist. LEXIS, at *15-16. Title 29 U.S.C. § 1132(a)(1)(B) allows a person to bring a civil action to recover benefits due to him under the terms of the Plan.

In this case, Plaintiff's claim for equitable reformation is barred because he has an adequate remedy at law for money damages pursuant to 29 U.S.C. § 1132(a)(1)(B). In fact, Plaintiff has expressly sought relief under this provision. (Pl. Compl., ¶ 17.) And in his prayer for relief, Plaintiff seeks an Order compelling Defendants to distribute disability benefits to him. (Pl. Compl., ¶ (a)). Because "[a]lmost invariably suits seeking to compel the defendant to pay a sum of money to the plaintiff are suits for money damages," Plaintiff has an adequate remedy at law, and he is barred from seeking equitable reformation. Nechis, 421 F.3d at 103.

But even if Plaintiff could bring a claim for equitable reformation, Defendants would still be entitled to summary judgment. First, there is no evidence that the SPD was the product of fraud. Second, Plaintiff's individual mistake is insufficient to cause this Court to reform the SPD. Atwell's similar mistake is of no moment as her mistake is partially based on Plaintiff's representation to her about the meaning of the SPD's terms. Finally, Plaintiff points to no ERISA provision, nor has this Court found one upon its own review, that has been violated by the terms of the SPD. Consequently, Defendants are entitled to summary judgment as to Plaintiff's claim for equitable reformation.

## IV.  CONCLUSION

For the foregoing reasons, Defendants' Motion to Strike Catherine Atwell's Affidavit is granted in part and denied in part.  Specifically, paragraphs 1-4, 6-15, and 17 are stricken from the record.  Additionally, Defendants' Motion for Summary Judgment is granted.

## V.  ORDERS

IT IS HEREBY ORDERED, that Defendants' Motion to Strike (Docket No. 20) is GRANTED in part and DENIED in part, consistent with this Decision and Order.

FURTHER, that Defendants' Motion for Summary Judgment (Docket No. 10) is GRANTED.

FURTHER, that the Clerk of the Court is directed to take the necessary steps to close this case.

SO ORDERED.


Dated:  September 26, 2009
       Buffalo, New York

                                         /s/William M. Skretny
                                         WILLIAM M. SKRETNY
                                         United States District Judge